UNITED STATES ex rel. ALEXANDRO-VICH et al. v. COMMISSIONER OF IMMIGRATION AT PORT OF NEW YORK.

(District Court, S. D. New York. November 7, 1925.)

No. M. 10–249.

I. Aliens ⬤⟿54(10).

Designation of an alien in a consul's visa as "temporary visitor" is merely a statement of his claim, and his real status is for determination by the immigration authorities on his arrival.

2. Aliens ⬤⟿54(9)—Decision that alien was not entitled to enter as temporary visitor held supported by evidence (Immigration Act 1924, § 3[2] being Comp. St. Supp. 1925, § 4289¾aa).

Decision of board of special inquiry that the claim of an immigrant that he was a temporary visitor only, without intention of remaining, was not made in good faith, held supported by circumstantial evidence, and not reviewable by a court.

Habeas Corpus. Suit by the United States, on the relation of David Alexandrovich and Michal Alexandrovich, against the Commissioner of Immigration at Port of New York. Petition dismissed.

Abraham Solomon, of New York City, for relator.

Emory R. Buckner, U. S. Atty., of New York City (James C. Thomas, of New York City, of counsel), for respondent.

THACHER, District Judge. The relators, who have been ordered deported by the Secretary of Labor, are a father, 45 years of

age, and his son, 11 years of age, natives of Latvia, where they have left the mother and four other children, from 4 to 15 years of age. Upon arrival in this country they presented to a board of special inquiry at Ellis Island a nonquota immigration visa issued by the American vice consul at Reval on October 20, 1924, reading as follows: "Visa granted as nonimmigrants, under section 3 (2) of the act of 1924, temporary visitor."

The father testified that he and his son were invited to come to this country for a temporary visit as the guests of his uncle, a citizen of the United States, who testified that he has retired from business, owns real estate to the extent of $17,000, and has a balance of $4,000 in bank. The father also has a brother, who is a citizen of the United States and is engaged in the wholesale dry goods business in Chicago, having an interest in a firm valued at from $20,000 to $25,000 from which business he draws $100 a week. The father, his brother, and his uncle all testified that the aliens had been invited to come to this country for a temporary visit. This testimony was rejected by the board of special inquiry, and the aliens were excluded as quota immigrants not in possession of an immigration visa.

It appears that the father has in his possession only the sum of $4; that before leaving Latvia he sold the business in which he was engaged (that of a restaurant keeper) for from $200 to $300, which he gave his wife, so that she would be able to go into business with another man and be self-supporting. Otherwise he is entirely without financial means of support. The uncle, who originally suggested the coming of these aliens to this country, testified:

"Q. What are you prepared to do for your nephew and his son? A. We are childless, and I will keep the child as my own, give him a good education, and so on.

"Q. You mean he is going to stay here permanently? A. Yes; if he gets permission.

"Q. Do you mean to say that both your nephew and his son are coming here for the purpose of making this country their permanent home? A. If it is possible to do so.

"Q. If he remains here only six months, who is going to support him? A. If he remains here six months, I am willing to sup-

port him and his boy and pay their return passage."

[1, 2] The designation of these aliens as temporary visitors by the vice consul is to be regarded simply as a statement of their claim, the validity of which remained to be determined by the immigration authorities upon their arrival in this country. U. S. ex rel. Spinosa v. Curran (D. C.) 4 F.(2d) 613, affirmed Id. 614. The question presented is whether or not there was any evidence before the board of special inquiry to support its conclusion that this claim was not advanced in good faith. The burden of proof was upon the aliens to establish that they were not subject to exclusion under any provision of the immigration laws. Section 23 of the Immigration Act of 1924 (Comp. St. Supp. 1925, § 4289¾kk). In other words, to offer proof that they were visiting the United States temporarily for business or pleasure. Section 3 (2) of the Immigration Act of 1924 (Comp. St. 1925, § 4289¾aa).

This burden has been fairly met by the affirmative testimony of the father, his brother and uncle. But the question remains whether such testimony must be accepted as conclusive. In other words, whether the triers of the fact might not properly regard it as unworthy of belief, because of the conceded facts surrounding the coming of these aliens to the United States. Certainly, for a man with no independent means of support to sell out his business and leave a wife and four children in Latvia, in order to bring another child of only 11 years to the United States for a temporary visit with relatives, upon whom he himself says he does not wish to impose the expense of his support while here, is to say the least an extraordinary state of facts. The circumstances indicate an intention to remain indefinitely, which is confirmed by the uncle's testimony.

In Chryssikos v. Commissioner of Immigration (C. C. A.) 3 F.(2d) 372, the facts were all the other way. In this case the circumstances were plainly sufficient to raise a question of fact as to the status of the relators as nonimmigrants, and the decision of that question is not reviewable here.

Accordingly the writ is dismissed, and the relators remanded to the custody of the Commissioner of Immigration.